**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____


No. 24-2560
_____


KRYSTAL A. UNDERWOOD,
                                                    Appellant

v.

CAMDEN COUNTY OFFICE OF THE SHERIFF, CAMDEN COUNTY OFFICE OF
THE SHERIFF EMERGENCY RESPONSE TEAM (SERT), BRAD BOEHLY, MARK
KEMNER, ZACHARY KOLINS, MICHAEL MCNAMEE, SCOT MENNEL, ROBERT
PLEWS, DONALD SOUDER, DAVID WRIGHT, ANDREW AUSTIN, STEPHEN
BEZICH, SAL RUSSOMANNO, CAMDEN COUNTY PROSECUTOR'S OFFICE,
JOSEPH MILLER, DETECTIVE JAMES HARMON, CHERRY HILL POLICE
DEPARTMENT, MICHAEL HIGGINS, JOHN/JANE DOES 1-10, jointly, severally
and/or in the alternative, ABC CORPORATIONS 1-5, jointly, severally and/or in the
alternative

_____


On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 1:22-cv-02268)
District Judge:  Honorable Karen M. Williams
_____


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 1, 2025
_____


Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, FREEMAN and MASCOTT, <u>Circuit</u> <u>Judges</u>


(Filed: July 21, 2026)

OPINION[*]

CHAGARES, <u>Chief</u> <u>Judge</u>.

Krystal A. Underwood appeals the District Court's order granting summary judgment with respect to her claims under 42 U.S.C. § 1983 against several institutional defendants — the Camden County Office of the Sheriff ("CCSO"), Camden County Office of the Sheriff Emergency Response Team ("SERT"), Camden County Prosecutor's Office ("CCPO"), and Cherry Hill Police Department ("CHPD") — as well as numerous individual officers, including Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, and David Wright (collectively, the "SERT Defendants"); Andrew Austin, Stephen Bezich, Sal Russomanno, and Joseph Miller (collectively, the "CCPO Defendants"); and James Harman.  For the following reasons, we will affirm.

I.[1]

Based on information from a confidential informant, the CCPO and CHPD began investigating Robert Kain for distribution of marijuana.  Officer Miller, with limited help from Detective Harman, prepared an affidavit for a no-knock search warrant of Kain's residence located at 308 Walnut Avenue, Gloucester City, New Jersey.  The affidavit

---

[*]  This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7, does not constitute binding precedent.

[1]  We write primarily for the parties, so we recite only the facts essential to our decision.

described the property as a "single-family home" and identified the "New Jersey Department of Taxation" as the source of information about the property. Appendix ("App.") 76. The actual source, however, was a nongovernmental website, "NJParcels.com," which Officer Miller used based on a detective's recommendation. Officer Miller believed that NJParcels.com pulled its information from governmental websites. The affidavit did not state that 308 Walnut Avenue had two mailboxes, two utility meters, and different-colored doors.

At around 6:00 a.m. on February 28, 2020, the SERT Defendants entered the front door of 308 Walnut Avenue, cleared the first-floor area, and could not find Kain. The officers could not find an internal staircase connecting the first and second floors. As the officers continued to search for Kain, they discovered a second, locked door on the exterior of the house. Neither the house nor the mailbox next to this door had any markings to indicate two separate apartments. The officers contacted Lieutenant Plews and Officer Miller, the affiant, to determine whether they were authorized to breach the door. Lieutenant Plews confirmed that the search warrant covered the entire property and authorized the breach.

Upstairs, the SERT Defendants discovered Underwood in her bed. Lieutenant Kolins saw that Underwood was not fully dressed and permitted her to put on a sweater. He then zip tied her hands together in front of her body while the officers continued their search. After searching the floor, the officers realized that this apartment was separate from Kain's residence downstairs. Underwood later filed a lawsuit, asserting claims under 42 U.S.C. § 1983 and New Jersey state law against the institutional defendants and

3

individual officers.  The District Court granted summary judgment on all claims in favor of the defendants.  This timely appeal followed.

II.[2]

Underwood challenges the District Court's order with respect to her judicial deception, unreasonable search, excessive force, and punitive damages claims against the individual officers.[3]  We exercise plenary review of the District Court's grant of summary judgment.  Razak v. Uber Techs., Inc., 951 F.3d 137, 144 (3d Cir. 2020).  We will affirm a grant of summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists if "a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  We construe all facts and inferences in favor of the nonmoving party.  Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015).[4]

Qualified immunity shields officials from personal liability under 42 U.S.C. § 1983 unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity entails a two-prong inquiry.  Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021).  The first prong requires us to determine

---

[2]  The District Court had jurisdiction over Underwood's § 1983 claims under 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.  We have jurisdiction under 28 U.S.C. § 1291.

[3]  On appeal, Underwood does not challenge the grant of summary judgment against the institutional defendants.

[4]  The factual discussion below is taken from the District Court's findings.

4

whether the facts, viewed in the light most favorable to the nonmoving party, show that the officer's conduct violated a constitutional right. Id. Under the second prong, we consider whether the right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful. Id. The District Court focused its analysis on whether the officers violated Underwood's constitutional rights. We will do the same and, therefore, need not address the "clearly established" prong.

A.

Underwood first contends that the District Court erred in granting summary judgment with respect to her judicial deception claim. Underwood claims that sufficient evidence exists in the record from which a reasonable jury could conclude that Officer Miller knowingly or recklessly made false statements or omissions when submitting the warrant affidavit.[5]

The affidavit underlying a search warrant is presumed to be valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). Yet a plaintiff may challenge the validity of a search warrant by claiming that the warrant affidavit contained incomplete or false information. See Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). A plaintiff may succeed in challenging the validity of a search warrant by proving that (1) "the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant"; and (2) "such statements or omissions [we]re material, or necessary, to the finding of

---

[5] Underwood challenges this part of the District Court's order with respect to Officer Miller only.

5

probable cause." Id. To determine whether false statements or omissions were material, we must first correct the warrant affidavit by removing the false statements or adding the omitted information. Id. at 400. We then evaluate whether the corrected warrant affidavit establishes probable cause. See id. Probable cause exists if, based on a totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 401 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

The District Court correctly concluded that the warrant affidavit, as reconstructed, still establishes probable cause to search the entirety of 308 Walnut Avenue. To correct the warrant affidavit, we replace the words "New Jersey Department of Taxation" with "NJParcels.com." We also add that: the owner does not live at the address; there are two utility meters, two mailboxes, and different-colored doors; and a female is registered to vote there. These additional facts may raise questions about the reliability of the affiant's characterization of the property. But they do not impact the probable cause analysis, particularly when the affidavit included information that both doors of the property were used in connection with drug transactions. A reliable confidential informant bought marijuana from Kain at his home, 308 Walnut Avenue. As part of the buy, the informant entered the front door of the property and emerged with marijuana a few minutes later. Law enforcement later observed Kain exiting the property's side door on his way to another controlled buy with the informant. These facts are sufficient to establish probable cause.

6

The record also suggests that Officer Miller did not make the false statements or omissions knowingly or with a reckless disregard for the truth. The District Court found that this was only the second time Officer Miller had applied for a warrant. Before preparing the affidavit, Officer Miller observed 308 Walnut Avenue three or four times and did not notice that the property had two mailboxes and two utility meters. The house also did not have any signage indicating two separate apartments. When he submitted the affidavit, Officer Miller believed that NJParcels.com pulled its information from governmental tax websites. Although Officer Miller made a mistake in preparing the warrant affidavit, the record does not show that Officer Miller's false statement and omissions were made knowingly or with a reckless disregard for the truth. Accordingly, we will affirm the District Court's order with respect to Underwood's judicial deception claim.

B.

Underwood next challenges the District Court's conclusion that the officers' search of her apartment was lawful. Underwood's unreasonable search claim rests on two grounds: (1) the validity of the warrant and (2) the officers' conduct during the execution of the warrant.

Underwood first contends that the warrant was invalid because it contained false information, thereby rendering the search unlawful. Underwood relies on the same arguments offered in support of her judicial deception claim. We assess the validity of a warrant based on "the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate." Maryland v. Garrison, 480 U.S. 79, 85

7

(1987). As explained above, the warrant was valid — despite containing inaccurate information — because a corrected warrant affidavit would still establish probable cause. The record also does not suggest that Officer Miller knew or recklessly disregarded that 308 Walnut Avenue was a duplex, rather than a single-family home.

Underwood next claims that the officers' execution of the search warrant was unlawful. The District Court concluded that the officers were executing a facially valid warrant and that the officers' failure to realize the overbreadth of the warrant was objectively reasonable. We agree.

A search is typically reasonable if the officer is authorized by a valid warrant. See Illinois v. Rodriguez, 497 U.S. 177, 184 (1990). The "mistaken execution of a valid search warrant on the wrong premises" does not necessarily violate the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 396 (1989). When officers execute a valid warrant that describes a premises too broadly, the validity of the officers' search "depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." Garrison, 480 U.S. at 88. If officers know or should have known that a property contains multiple dwellings, they must limit the search to areas clearly covered by the warrant or discontinue the search. United States v. Ritter, 416 F.3d 256, 266 (3d Cir. 2005). We assess the officers' conduct and the limits of the search based on the information available as the search unfolded. See Garrison, 480 U.S. at 87.

Here, the officers were executing a facially valid warrant. As the District Court found, the warrant identified the location to be searched, described details of the

8

controlled buy at that location, and specified the drugs and drug paraphernalia for which the officers were searching. Our analysis thus turns on whether it was objectively reasonable for the officers to not realize the overbreadth of the warrant. We conclude that it was.

The record shows that before executing the warrant, the officers knew that Kain had exited the second door of the property on his way to a controlled buy, and they did not observe the property's two mailboxes and meters. In fact, the officers did not learn about the property's two meters until after the warrant had been executed. While executing the warrant, the officers discovered the lack of an internal staircase connecting the first and second floors of the property. After searching the first floor and not finding the suspect, some officers discovered a second, locked door on the exterior of the house. Lieutenant Plews noticed a mailbox by this door. It is undisputed that neither the door nor the mailbox had any markings indicating a separate dwelling. The District Court found that the officers contacted Lieutenant Plews and Officer Miller, the warrant affiant, to determine whether they were authorized to breach the second door. Lieutenant Plews confirmed that the search warrant covered the entire property and authorized the breach. Only then did the officers breach the door and enter Underwood's apartment.

On this record, we agree with the District Court that there is not a sufficient basis from which to conclude the officers' conduct was objectively unreasonable. We will therefore affirm the District Court's grant of summary judgment as to the unconstitutional search claim.

C.

Underwood next contests the District Court's conclusion that the individual officers did not violate Underwood's constitutional right to be free from excessive force.

The Fourth Amendment guarantees the "right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. We analyze Fourth Amendment excessive force claims under an objective reasonableness standard. Graham, 490 U.S. at 388. The objective reasonableness standard cannot be applied "mechanically." Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015). Rather, the objective reasonableness analysis requires "careful attention to the facts and circumstances of each particular case." Graham, 490 U.S. at 396. These circumstances include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Kingsley, 576 U.S. at 397. We consider these circumstances "from the perspective of a reasonable officer on the scene." Id.

Even when viewing the factors in Underwood's favor, there is no dispute of material fact with respect to whether the officers' use of force was reasonable. The District Court found that the officers were executing a no-knock search warrant, a warrant that is "only granted sparingly in cases where there is inherent danger." App. 34–35. The officers expected to find Kain, his mother, and an aggressive dog inside 308 Walnut Avenue. After not finding anyone on the first floor, the officers felt nervous

10

and feared that Kain could be hiding to ambush them. Upon entering the second floor, Lieutenant Kolins discovered Underwood in her bed, noticed that she was not wearing a shirt, and permitted her to put on a shirt. Lieutenant Kolins restrained Underwood's hands in front of her with zip ties while the other officers searched for Kain.

The District Court determined that detaining Underwood in zip ties was a reasonable use of force in light of the context and circumstances and minimal nature of the detention. The District Court presumed that Underwood was detained for at most thirty minutes to an hour. The District Court found that Underwood did not communicate to the officers that she experienced any pain from the zip ties, a factor that this Court has considered meaningful when evaluating excessive force claims involving restraints. See Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004). The District Court also found a lack of evidence or allegations that the use of zip ties injured Underwood. Underwood stated in an interrogatory answer that at most the zip ties were pulled tightly around her wrists and pressed into her skin. Because the record does not demonstrate that the officers' use of force was objectively unreasonable, we will affirm the District Court's judgment with respect to Underwood's excessive force claim.

## D.

Finally, Underwood challenges the District Court's grant of summary judgment with respect to her punitive damages claim. The District Court determined that Underwood had failed to identify any material facts demonstrating an evil motive or reckless indifference. We agree.

11

Punitive damages may be awarded under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Coleman v. Kaye, 87 F.3d 1491, 1497 (3d Cir. 1996) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). A defendant's negligence is not sufficient to warrant a punitive damages award. See Savarese v. Agriss, 883 F.2d 1194, 1204–05 (3d Cir. 1989). Underwood has not identified any facts showing evil intent or callous indifference. At most, Officer Miller's preparation of the warrant affidavit was negligent. We will therefore affirm the District Court's judgment.

## III.

For the foregoing reasons, we will affirm the District Court's order granting summary judgment.